IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DANA LAWRENCE SINGER,

                    Petitioner,

           vs.

D. K. SISTO, Warden, California State
Prison, Solano,

                    Respondent.

No. 2:08-cv-00048-JKS

MEMORANDUM DECISION

Dana Lawrence Singer, a state prisoner appearing *pro se*, has filed a petition for relief under 28 U.S.C. § 2254.  Singer is currently in the custody of the California Department of Corrections and Rehabilitation, incarcerated at the California State Prison, Solano.  Respondent ("State") has answered the petition, and Singer has replied.

## I.  BACKGROUND/PRIOR PROCEEDINGS

In September 1991 Singer was convicted in the Los Angeles County Superior Court on a guilty plea of Murder in the Second Degree (Cal. Penal Code § 187(a)), and with use of a firearm (Cal. Penal Code § 12022(a)).  The trial court sentenced Singer to an indeterminate prison term of 20 years to life.  Singer does not contest his conviction or sentence in this proceeding.  In April 2006 Singer, represented by counsel, made his second appearance before the Board of Prison Terms ("Board"), which denied him parole for a period of three years.  Singer, appearing *pro se*, timely filed a petition for habeas relief in the Los Angeles County Superior Court, which denied his petition in an unreported, reasoned decision.  Singer's subsequent petition for habeas

relief was denied by the California Court of Appeal in an unreported, partially reasoned decision, and the California Supreme Court summarily denied review without opinion or citation to authority on October 10, 2007.  Singer timely filed his petition for relief in this Court on January 6, 2008.

After briefing was completed, the United States Court of Appeals for the Ninth Circuit, sitting en banc, decided *Hayward v. Marshall*.[1]  At Docket No. 17 this Court entered an Order directing the parties to file supplemental briefs addressing the *Hayward* decision, in particular that "[t]he prisoner's aggravated offense does not establish current dangerousness 'unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state' supports the inference of dangerousness."[2]  The Court also directed the parties to consider two Ninth Circuit Decisions applying *Hayward*.[3]  Both parties have submitted supplemental briefing.

The facts of the crime for which Singer was convicted, as recited by the Los Angeles County Superior Court, are:

> The record reflects that on July 27, 1990, [Singer's] crime partner was involved in a minor traffic accident when his girlfriend rear-ended another vehicle.  The parties exchanged information for insurance purposes.  The next morning [Singer] and his crime partner went to the other driver's home to speak to him about paying for the damage without filing an insurance claim.  [Singer] brought a nine millimeter semi-automatic handgun, which he planned to use to scare the victim into returning the license and registration information to his friend.  When [Singer] pulled out the gun, the victim laughed at him so he shot him in the back of the head.  They then removed his wallet with the identification

---

[1] 603 F.3d 546 (9th Cir. 2010) (en banc).

[2] *Hayward*, 603 F.3d at 562.

[3] *Pearson v. Muntz*, 606 F.3d 606 (9th Cir. 2010) (per curiam), and *Cooke v. Solis*, 606 F.3d 1206 (9th Cir. 2010).

information.  They were arrested when they attempted to use the victim's credit card to buy tires.[4]

## II.  GROUNDS RAISED/DEFENSES

In his petition, Singer raises four grounds for relief:  (1) there was insufficient evidence to support denial of parole; (2) the action of the Board abolished his liberty interests created by the mandatory parole provisions; (3) the decision of the Board was arbitrary and capricious, violating his constitutional rights of due process and equal protection; and (4) in ignoring the report of the psychologist, his due process rights were violated.  The State does not assert any affirmative defense.[5]

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[6]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[7]  The holding must also be intended to be binding upon the

---

[4] Docket No. 13-4, pp. 27-28.

[5] Rules—Section 2254 Cases, Rule 5(b).

[6] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[7] *Williams*, 529 U.S. at 412.

3

states; that is, the decision must be based upon constitutional grounds, not on the supervisory

power of the Supreme Court over federal courts.[8]  Thus, where holdings of the Supreme Court

regarding the issue presented on habeas review are lacking, "it cannot be said that the state court

'unreasonabl[y] appli[ed] clearly established Federal law.'"[9]  When a claim falls under the

"unreasonable application" prong, a state court's application of Supreme Court precedent must

be objectively unreasonable, not just incorrect or erroneous.[10]  The Supreme Court has made

clear that the objectively unreasonable standard is a substantially higher threshold than simply

believing that the state court determination was incorrect.[11]  "[A]bsent a specific constitutional

violation, federal habeas corpus review of [state court] error is limited to whether the error 'so

infected the [proceeding] with unfairness as to make the [result] a denial of due process.'"[12]  In a

federal habeas proceeding, the standard under which this Court must assess the prejudicial

impact of constitutional error in a state-court criminal proceeding is whether the error had a

---

[8] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[9] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, 127 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[10] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[11] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[12] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

substantial and injurious effect or influence in determining the outcome.[13]  The petitioner has the burden of showing by a preponderance of the evidence that he or she merits habeas relief.[14]

In applying this standard, this Court reviews the last reasoned decision by the state court,[15] which in this case was in part that of the Los Angeles Superior Court and in part that of the California Court of Appeal.  Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[16]  This presumption applies to state trial courts and appellate courts alike.[17]

## IV.  DISCUSSION

This Court notes that Singer's arguments, with one exception, are premised upon California state-court decisions, not decisions of the United States Supreme Court, the standard mandated by § 2254(d).[18]  In his traverse, Singer does, however, present arguments based upon due process decisions of the Supreme Court, in a context applicable to this case.  This Court does not ordinarily consider arguments raised for the first time in the traverse.  "The petition must: (1) specify *all* the grounds for relief available to the petitioner; (2) state the facts supporting each

---

[13] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[14] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

[15] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004).

[16] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[17] *Stevenson v. Lewis*, 384 F.3d 1069, 1072 (9th Cir. 2004).

[18] *See* discussion on review of state law questions, *post*, pp. 19-20.

ground; [and] (3) state the relief requested . . . ."[19]  In this case, however, two factors justify

departing from that general rule.  First, Singer is responding to arguments raised by the

Respondent.  Second, and perhaps more importantly, is the striking similarity of the legal

principles discussed in the California cases when compared to the constitutional principles

applied by the Supreme Court.  Therefore, the Court will address the grounds for relief raised by

Singer applying the constitutional standard.

Although this Court normally considers the grounds raised separately *in seriatim* as

presented by the Petitioner, in this case this Court departs from that usual practice.  First, because

the determination of the fourth ground may impact the first three grounds, it will be discussed

first.  Second, Singer's first three grounds are all variations of the same argument stated in

slightly different terms.  The common thread binding these three grounds is that Singer contends

he has been a model prisoner with an exemplary prison record, has met all the statutory

requirements for release on parole, and the Board improperly based its decision principally, if not

solely, on the nature of his underlying conviction.  It is, therefore, appropriate to discuss the first

three grounds as a single group.

Ground 4:   Psychologist's Report

Singer argues that the Board and the Los Angeles Superior Court erred in disregarding the

report of the psychologist that Singer had unique insight into his case, remorse, and an

understanding of his role in the crime.  Although Singer raised this issue before the California

courts, no decision directly addressed it.  When there is no reasoned state court decision denying

an issue presented to the state court and raised in a federal habeas petition, this Court must

---

[19] Rules—Section 2254 Cases, Rule 2(c) (emphasis added).

6

assume that the state court decided all the issues presented to it and perform an independent

review of the record to ascertain whether the state court decision was objectively unreasonable.[20]

The scope of this review is for clear error of the assumed state court ruling on the petition:

> [A]lthough we cannot undertake our review by analyzing the basis for the state
> court's decision, we can view it through the "objectively reasonable" lens ground
> by *Williams* . . . .  Federal habeas review is not *de novo* when the state court does
> not supply reasoning for its decision, but an independent review of the record is
> required to determine whether the state court clearly erred in its application of
> controlling federal law.  Only by that examination may we determine whether the
> state court's decision was objectively reasonable.[21]

"[A]lthough we independently review the record, we still defer to the state court's ultimate

decision."[22]

Singer bases this argument on the fact that, in a decision upholding a prior denial of

parole, a superior court judge stated that the *only* criteria needed to be found suitable for parole

was his lack of insight into the crime.  Singer argues that since the later psychological report was

positive, this hurdle was cleared and he was erroneously found to be unsuitable for parole.

Singer misconstrues the holding of the Los Angeles Superior Court in denying his habeas petition

in 2004.  In that decision the court stated:

> The Court notes, however, that the psychologist's findings as to
> Petitioner's insight seem unsupported by the record as presented to the Board and
> the Court.  (*See* Psychological Evaluation for the Board of Prison Terms, *supra,* at
> 4.)  Thus, the Court recommends that the Board order a new psychological

---

[20] *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir. 2005) (per curiam).

[21] *Delgado v. Lewis* (*Delgado II*), 223 F.3d 976, 982 (9th Cir. 2000) (internal citation omitted); *see Lewis v. Mayle*, 391 F.3d 989, 996 (9th Cir. 2004).

[22] *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

evaluation prior to Petitioner's next hearing, specifically addressing the issue of insight.[23]

This decision cannot be considered as the law of the case binding either the Board or a court in a subsequent parole proceeding in the manner suggested by Singer, i.e., that once he had a favorable psychological evaluation he was entitled to parole. The Los Angeles Superior Court recommended a new psychological evaluation addressing the "insight" issue. Nothing in the court's holding can be construed as holding that a favorable psychological evaluation would automatically require a finding of suitability for parole. In his follow-up evaluation, the psychologist opined: "He appeared to have a great deal of insight and understanding in regard to his commitment offense. (This examiner is also of the opinion that his commitment offense was more of an aberration than a lifestyle.)"[24] In announcing the decision of the panel, the presiding commissioner stated:

> I don't pretend to be a psychiatrist, and we have considered the psychological reports, reports plural. The last one prepared by John Rouse on January 24th of this year, 2006, who indicates there are no mental health issues. I must say when he concludes in the area that I read that you appear to have a great deal of insight and understanding in regard to the offense, I don't know what he's referring to in his report. I certainly didn't see that in our conversations with you. You know how to say I accept responsibility. You know how to say I'm sorry. I don't doubt your sincerity. But given the totally aberrant crime that occurred here, and the fact I think he indicated that, this examiner is also of the opinion that his commitment offense was more of an aberration than lifestyle, meaning, well, something strange happened. Something unusual happened. Well, okay, if that's as good as we can get, maybe it is, but then you killed somebody, and we've got to be assured that that's not going to happen again.
> So, we believe that a greater period of, not only reflection but to the extent that you're going to get in depth therapy that looks at the potential causes of the circumstance to the greatest extent possible, such that these questions can either

---

[23] Docket No. 13-1, p. 31.

[24] Docket No. 13-5, p. 13.

be answered or at least explored and eliminated, because before we can be convinced to ourselves, before we can recommend to our Board, to the Governor, or to the People of the State, it's clear to us that there has to be a greater understanding, both of the causes of what occurred such that we can be assured it won't happen again.  And I would suggest that activities that give you greater insight into the effects of your action (indiscernible - loud coughing) vehicle to assist in obtaining greater insight.  Doing things that demonstrate by giving back to others the insight that you gain from that.  All those things would be helpful.[25]

The basic shortcoming in Singer's argument is that it is based upon the admissibility of expert opinion testimony, not its weight and, certainly, not that the opinion of the psychologist is necessarily conclusively binding on the issue of insight.  Singer has not cited any authority, binding or otherwise, that requires the California Board of Parole Hearings to accept, as binding, the opinion of the psychologist on the issue of insight, or any other psychological factor for that matter.  Nor has independent research by this Court found any such authority.  Indeed, the very regulation quoted by Singer suggests otherwise:

> (a) General.  The panel shall first determine whether a prisoner is suitable for release on parole.  Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.[26]

The determination of whether the release of a prisoner on parole will pose an unreasonable risk of danger to society in a particular case is committed to the judgment of the Board, weighing not

---

[25] Docket No. 13-2, pp. 75-76.

[26] Cal. Code Regs., tit. 15, § 2281(a).  Although Singer cites § 2280(a), the language he quoted is in § 2281(a).  The relevant section in Singer's cases, a convicted murderer for a murder committed after 1978, however, is § 2402(a), which similarly reads:
(a) General.  The panel shall first determine whether the life prisoner is suitable for release on parole.  Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.

just a single factor, but several factors.[27]  While the Board unquestionably should consider the opinion of the psychologist in exercising its judgment, nothing in the law suggests that the Board is bound by that opinion.

In this case, the psychologist does not state the facts or factors upon which he based his observation that it appeared Singer had significant insight.  Given the unprovoked nature of the crime and any plausible explanation in the record for Singer's aberrant behavior, this Court cannot say that the Board's finding that Singer lacked appropriate insight into the cause of his behavior was irrational, arbitrary or capricious.  On the record before it, this Court cannot say that the assumed decision of the state court rejecting Singer's position was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or  "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[28]  Nor can this Court find that the assumed decision of the state court unreasonably applied the correct legal principle to the facts of Singer's case within the scope of *Andrade-Williams-Schriro*; *i.e.*, the assumed decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable.  Singer is not entitled to relief under his fourth ground.

---

[27] Cal. Code Regs., tit. 15, § 2402(b), (c), (d); *In re Shaputis*, 190 P.3d 573, 583 (Cal. 2008).

[28] 28 U.S.C. § 2254(d).

Grounds 1:  Sufficiency of the Evidence; 2:  Violation of Mandatory Parole Provisions;

and 3:  Decision of the Board was Arbitrary and Capricious

As noted above, these three grounds are essentially variations of the same basic argument,

i.e., that the evidence is insufficient to support the denial of parole.  The Board found that Singer

would continue to pose an unreasonable risk of danger to society and a threat to public safety.  In

rejecting Singer's challenge of the Board's action, the Los Angeles Superior Court held:

> The Board found petitioner unsuitable for parole after a parole
> consideration hearing held on April 26, 2006.  [Singer] was denied parole for
> three years.  The Board concluded that [Singer] was unsuitable for parole and
> would pose an unreasonable risk of danger to society and a threat to public safety.
> The Board based its decision on several factors, including his commitment
> offense.
>       The Court finds that there is some evidence to support the board's finding
> that "the motive for the crime is inexplicable or very trivial in relation to the
> offense'  (Cal. Code Regs., tit. 15, § 2402, subd. (c)(l)(E).)  "To fit the regulatory
> description, the motive must be materially less significant (or more "trivial") than
> those which conventionally drive people to commit the offense in question, and
> there more indicative of a risk of danger to society if the prisoner is released than
> is ordinarily present."  (*In re Scott* (2004) 119 Cal.App.4th 871, at 893).  An
> inexplicable motive is one where, "the commitment offense does not appear to be
> related to the conduct of the victim and has no other discernible purpose."  (*Id.*)
> [Singer], armed with a handgun, went to the victim's home in order to retrieve
> registration information following a minor traffic accident.  He offers no rational
> explanation for shooting the victim other than low self-esteem.  When asked why
> the victim had to die, petitioner's only explanation was "I didn't really care about
> myself as a person back then, so I just didn't take into consideration the actions I
> was doing."  (*Reporter's Transcript,* April 26, 2006, p. 34)  The Board found that
> [Singer] killed his victim for no discernible purpose and that avoidance of an
> insurance claim was a materially less significant motive than those which
> conventionally drive people to murder.  There is some evidence to support that
> conclusion.[29]

The California Court of Appeal held:

---

[29] Docket No. 13-4, pp. 28–29.

The court has read and considered the petition for writ of habeas corpus filed June 28, 2007.  The petition is denied.  The record submitted reflects some evidence to support the challenged decision.  (*In re Dannenberg* (2005) 34 Ca1.4th 1061, 1071, 1080; *In re Rosenkrantz* (2002) 29 Ca1.4th 616, 664-665.) [Singer's] further claims of general bias in the Board of Parole Hearings panel, and employment of a no-parole policy for murders, are unsupported.[30]

"When habeas courts review the 'some evidence' requirement in California parole cases, both the subsidiary findings and the ultimate finding of some evidence constitute factual findings."[31]  In its Order requesting supplemental briefing, this Court directed the State to "specifically identify those characteristics, other than the underlying commitment offense, that support a finding that release of the Petitioner to parole status poses a current threat to public safety, and point to the specific evidence in the record that supports that determination."[32]  In its response, the State argues that, because *Hayward* was wrongly decided and represents circuit law, not the law as established by the Supreme Court, this Court need not follow *Hayward* or the Ninth Circuit cases applying *Hayward*.  The State, asserting that the order requiring that the evidence supporting the finding that the release of Singer to parole status poses a current threat to public safety be identified is an improper question, declined to provide the required information.[33]  This Court disagrees.  A district court is bound by the published decisions of the

---

[30] Docket No. 13-6, p. 2.

[31] *Cooke*, 606 F.3d at 1216.

[32] Docket No. 17, p. 2.

[33] If this were a single instance, this Court would be inclined to ignore the refusal to address *Hayward*.  Unfortunately, this is not such an isolated incident.  This Court has received several similar responses to its order in other parole cases that were held in abeyance pending the en banc decision in *Hayward*, e.g., *Walker v. Kramer*, Case No. 2:07-cv-00803-JKS, *Dewey v. Sisto*, Case No. 2:08-cv- 00580-JKS, and *Feliz v. Sisto*, Case No. 2:08-cv-01508-JKS, of which this Court takes judicial notice.  Fed. R. Evid. 201.  Consequently, this Court must conclude that

(continued...)

Ninth Circuit until overruled or undermined by higher authority, e.g., an en banc decision of the Ninth Circuit, a Supreme Court decision, or subsequent legislation.[34]  This has not occurred. This Court notes that if, as the State contends, *Hayward* was incorrectly decided, the appropriate remedy is to file a petition for *certiorari* in the Supreme Court within 90 days of the date the petition for rehearing in *Hayward* was denied.[35]  The 90-day period began to run June 2, 2010, when the Ninth Circuit denied Hayward's petition for a rehearing.[36]  As the time for filing a petition for *certiorari* had not yet expired, if the State contemplated seeking *certiorari*, the State could have requested this Court to grant additional time to comply with the Order.  Alternatively, the State could have preserved its arguments that *Hayward* was erroneously decided, for further appellate review, and still complied with the express terms of the Order.  What the State could not do is what it did do in this case—ignore the clearly articulated requirements of *Hayward* and

---

[33](...continued)
the position taken in this case represents the official position of the State of California, acting through its Attorney General.

[34] *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc).  A complication exists because the *Hayward* court predicated a federally protected liberty interest on California state statutes, regulations, and California Supreme Court decisions.  Thus, a California Supreme Court decision subsequent to *Hayward*, *Pearson*, and *Cooke*, rejecting their reasoning might be highly relevant.  No such case has been identified.

[35] Supreme Court Rule 13.

[36] *Hayward v. Marshall*, Ninth Circuit Case No. 06-55392, Docket No. 120, of which this Court takes judicial notice.  Fed. R. Evid. 201.

decline to obey this Court's specific order.[37]  In so doing, even if this Court's Order was

"improper," the State did so at its own peril.[38]

This Court treats the State's failure to point to the evidence in the record supporting the

factors, other than the commitment offense, cited by the Board's finding that Singer poses a

present threat of danger to society as conceding that no such evidence exists.[39]

In finding Singer unsuitable for parole, the Board found:

> **PRESIDING COMMISSIONER FARMER**:  Okay, Mr. Singer, the
> Panel has reviewed all information received in your Hearing and reviewed your

---

[37] Indeed, as a result of the failure of the State to comply with this Court's Order, the State appears to assume that this Court will mine the record to find sufficient evidence to support the decision of the California Supreme Court.  It is unquestionably the rule that the burden of establishing a violation of a constitutional right sufficient to warrant habeas relief is placed on the petitioner.  *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").  That does not, however, mean that the petitioner has the burden of proving a "negative," i.e., that something does not exist.  The State should not expect a federal district court to mine the record to find evidence that Singer is currently dangerous, which, if found, would support a determination that, as required by *Hayward*, the California judicial decision approving the Board's decision rejecting parole was not an unreasonable application of the California some evidence requirement, or was not based on an unreasonable determination of the facts in light of the evidence.

[38] *See Walker v. City of Birmingham*, 388 U.S. 307, 314 (1967) ("until its decision is reversed for error by orderly review, either by itself or by a higher court, [a court's] orders based on its decision are to be respected, and disobedience of them is contempt of its lawful authority, to be punished.") (quoting *Howat v. State of Kansas*, 258 U.S. 181, 189-90 (1922)); *Celotex Corp. v. Edwards*, 514 U.S. 300, 313 (1995) (same); *United States v. United Mine Workers of America*, 330 U.S. 358, 293 (1947) (same).

[39] This Court recognizes that the court in *Hayward* ultimately affirmed the denial of parole.  The Attorney General and his subordinates know the record in this case.  They also know the Ninth Circuit's decision in *Hayward* and the California Supreme Court decisions in *Lawrence* and *Shaputis*.  If the record in this case could be reconciled with those cases and the denial of parole, competent counsel would have so argued.  Because the Attorney General is competent counsel, the State's failure to develop the argument lends support to only one conclusion:  that the record will not support a finding of present dangerousness.

14

Files, the material that you've submitted, observed the answers you've provided to the questions, and listened to the arguments of counsel.

We consider all of this and rely upon the following circumstances in concluding that we believe you remain unsuitable for parole and would continue to pose an unreasonable risk of danger to society and a threat to public safety if released. The offense (sic) looks at -- with great importance the commitment offense. This was an offense which can be summarized as one carried out in a special callous manner. It seemed to be carried out in a calculated manner, which could be reflected as an execution style murder. I'll explain that in a minute.

The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering. A motive for the crime is inexplicable or if one can somehow discern some explanation, i.e., he was killed because you wanted to retrieve a paper, it's obviously very trivial in relation to the offense.

In this circumstance, you and your crime partner, following an accident in which you had made arrangements to go to the victim's house and discuss settling the accident without the need to refer to the insurance company. Went to his house, armed with a weapon, the preconceived plan, as you stated, to retrieve this paper ostensibly because if you had the paper and left, you could not be identified as the other party in the accident. It's not real clear what your motive was. But you carried the gun in and then after asking for the information and pulling out a weapon, when the victim looked at you apparently incredulous and said something to the effect, you're kidding or some expression of disbelief, turned his back and you shot him in the back of the head.

Your explanation as best as you were able to give it is that you panicked, you were fearful, not sure what you were fearful of, and the way the shot was fired would allow itself just reasonably to interpretation that you planned it that way all along. You can't tell one way or the other. And certainly you were there with the weapon intentionally, and this was the result.

You come to this crime from a relatively privileged background. There's no precursor and no criminal record. Your parents were divorced. That appeared to be the only factor that one could look at with possible explanation for something in your background that would give some clue as to why or how this happened. You come to the institution -- you -- from the standpoint of being disciplinary free, you are disciplinary free. Some of the (indiscernible) of the model inmate in that calculated one 115 that occurred back in '93, so in essence, you're disciplinary free, and you seem to have taken a lot of programs, both to improve yourself vocationally and educationally. You're going to college through correspondence courses. You appear to have no mental health issues. In response to the prior Panel's suggestion that you do some self-help, albeit it delayed, as the last Panel made that recommendation in 2002, the materials that you read the book reports on didn't come to you until apparently last fall, so in the opinion of the Panel, that could have been responded sooner. But so you've done these --

you've done the visible work of getting the books, writing reports and yet when we attempt to explore in greater depth, why did this happen, you're still very much at a loss for words or you respond in ways that mouth some of the things that you read in the books without any attempt by how you articulate the issue here today, or by reference to your book reports, to somehow relate what you read in the book to you and this incident.

And so what is continuing to disturb the Panel and may well disturb future Panels, is not that you appear to be evading these issues, but that you haven't gotten there yet.  When we see a crime such as this that occurs with no prior history, and this dramatic consequence, and then a lack of any (indiscernible) understanding following as to why it occurred, the reasonable question can be asked, well, we know what he did.  We don't know what caused it.  He doesn't seem to know what caused it.  Nobody else can specifically tell us what caused this, caused it.  How can we be assured that the same circumstances might not arise again?  I don't dispute your expressions at this point of remorse.  However, from the extent that remorse, true remorse is developed through understanding, although you may have taken steps towards doing that understanding, in the opinion of this Commissioner, you've got a significant ways to go.  I don't pretend to be a psychiatrist, and we have considered the psychological reports, reports plural.  The last one prepared by John Rouse on January 24th of this year, 2006, who indicates there are no mental health issues.  I must say when he concludes in the area that I read that you appear to have a great deal of insight and understanding in regard to the offense, I don't know what he's referring to in his report.  I certainly didn't see that in our conversations with you.  You know how to say I accept responsibility.  You know how to say I'm sorry.  I don't doubt your sincerity.  But given the totally aberrant crime that occurred here, and the fact I think he indicated that, this examiner is also of the opinion that his commitment offense was more of an aberration than lifestyle, meaning, well, something strange happened.  Something unusual happened.  Well, okay, if that's as good as we can get, maybe it is, but then you killed somebody, and we've got to be assured that that's not going to happen again.

So, we believe that a greater period of, not only reflection but to the extent that you're going to get in depth therapy that looks at the potential causes of the circumstance to the greatest extent possible, such that these questions can either be answered or at least explored and eliminated, because before we can be convinced to ourselves, before we can recommend to our Board, to the Governor, or to the People of the State, it's clear to us that there has to be a greater understanding, both of the causes of what occurred such that we can be assured it won't happen again.  And I would suggest that activities that give you greater insight into the effects of your action (indiscernible - loud coughing) vehicle to assist in obtaining greater insight.  Doing things that demonstrate by giving back to others the insight that you gain from that.  All those things would be helpful.

Because you appeared to be in the beginning stages of what is a longer period necessary to gain understanding and because of the enormity of the crime,

in a separate decision, the Hearing Panel finds its not reasonable to assume that parole would be granted at a Hearing during the following three years and we again deny you for that period of time.  In rendering this decision and a supplemental decision as to time, we likewise considered the input of the District Attorney's Office of Los Angeles County and the letters received from the Los Angeles Police Department. (indiscernible) your sincerity to try and find those answers, but I suggest that you've got some continued work that you need to do, sir.

You're blessed with the support of your family and maybe that can help provide some of the resources to do that.  Your parole plans have obviously -- through their resources, you obviously have employment opportunities and resident opportunities out there, but you and we need to know more about what happened here before we can feel comfortable in finding you suitable.  So, I wish you well, sir.  I'll turn it over to Commissioner Cater for any additional comments he has.

**DEPUTY COMMISSIONER CATER:** I wanted to touch on some positive things that I see I can appreciate (tape ends)

(Off the Record)

**DEPUTY COMMISSIONER CATER**:  -- we continue on Side 2.  To begin again, Mr. Singer, you've been responsive to our questions today.  I find you credible considering the circumstances.  You're well adjusted within CDC.  You're well spoken and you're making the best of some adverse circumstances.  As the Chair pointed to and others, we may well have an aberration here, but I have some lingering discomfort that we may have a situation where it will surface again, and that's has everything to do with my recommending we deny parole.  Thank you.

**PRESIDING COMMISSIONER FARMER**:  To be more specific, with regard to recommendations, obviously, you need to remain disciplinary free, I don't anticipate a problem, continue your vocational and educational programming.  What -- talk with your counselor about the possibility of getting more intense therapy, whether that's available.  If it's not, and I realize the limitations there, and then you're just going to have to get more introspective.  And again, I think you appear to **--** that you've written in the book reports is telling what the books have said.  You know, I'm talking about how that relates directly to you and the commitment offense.  You know (indiscernible) something here, that's just totally beyond the mark.  I mean, it sounds like -- I'll tell you exactly what it sounds like.  It sounds like somebody who's trying to explain to their mom or the authorities, why the car got wrecked or why they didn't get their homework in on time.  Because I could hear myself giving those same kinds of explanations.  But in this case, somebody died.  And the enormity of that is something that we don't see has been directly confronted and attempted to be explained.  And that's what we want you to work on.  Okay.  Hey, there's people

17

here that are never going to get out.  You're not one of those, but you've got some work to do.  Okay.  Good luck to you, sir.[40]

This Court must decide the case on the law as it exists at the time it renders is decision and, if the law changes while the case is pending, this Court applies the new rule.[41]  Thus, although it establishes a new rule, the holding in *Hayward* is controlling.  In this case, this Court "need only decide whether the California judicial decision approving the [Board's] decision rejecting parole was an 'unreasonable application' of the California 'some evidence' requirement, or 'was based on an unreasonable determination of the facts in light of the evidence.'"[42]  By its reference to § 2254(d), the Ninth Circuit implicitly, if not explicitly, directed this Court to apply § 2254(d) to the decisions of the California Supreme Court using the same standards as are applied to the determination of the law as established by the United States Supreme Court.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."[43]  The Supreme Court has explained that "clearly established Federal law" in

---

[40] Docket No. 13-2, pp. 71-80.

[41] *See Thorpe v. Housing Authority of City of Durham*, 393 U.S. 268, 281-82 (1969); *Lambert v. Blodgett*, 393 F.3d 943, 973 n.21 (9th Cir. 2004).

[42] *Hayward*, 603 F.3d at 563 (footnotes citing 28 U.S.C. § 2254(d) omitted).

[43] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

§ 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[44]  When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must be objectively unreasonable, not just incorrect or erroneous.[45]  The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing that the state court determination was incorrect.[46]  Consequently, it appears that, under the mandate of *Hayward*, this Court must canvas and apply California law as it existed at the time of the state court decision to the facts in the record as presented to the state court.

The mandate in *Hayward* is that this Court must review the decisions of state courts applying state law—in effect serving as a super-appellate court over state court decisions.  This is in tension with the holdings of the Supreme Court.  It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.[47]  A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court

---

[44] *Williams*, 529 U.S. at 412.

[45] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[46] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[47] *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (it is presumed that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002); *see also Engle v. Isaac*, 456 U.S. 107, 119 (1982) (challenging the correctness of the application of state law does not allege a deprivation of federal rights sufficient for habeas relief); *Bell v. Cone,* 543 U.S. 447, 455 (2005) (a federal court may not lightly presume that a state court failed to apply its own law).

sitting in habeas corpus."[48]  This principle applied to federal habeas review of state convictions long before AEDPA.[49]  A federal court errs if it interprets a state legal doctrine in a manner that directly conflicts with the state supreme court's interpretation of the law.[50]  It does not matter that the state supreme court's statement of the law was dictum if it is perfectly clear and unambiguous.[51]

At the time of the state court decision in this case, the California "some evidence" rule was embodied in *Rosenkrantz* and *Dannenberg*.  Subsequently, the California Supreme Court, applying *Rosenkrantz* and *Dannenberg*, decided *In re Lawrence*[52] and *In re Shaputis*.[53]

In *Rosenkrantz*, the California Supreme Court held:

> [. . . .]  "Due process requires that the [Board's] decision be supported by some evidence in the record.  Only a modicum of evidence is required. Resolution of any conflicts in the evidence and the weight to be given the evidence are matters within the authority of the [Board].  [. . . .]  [T]he precise manner in which the specified factors relevant to parole suitability are considered and balanced lies within the discretion of the [Board] . . . .  It is irrelevant that a court might determine that evidence in the record tending to establish suitability for parole far outweighs evidence demonstrating unsuitability for parole.  As long as the [Board's] decision reflects due consideration of the specified factors as applied to the individual prisoner in accordance with applicable legal standards,

---

[48] *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005); *see West v. AT&T,* 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law.  When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").

[49] *See Mullaney v. Wilbur,* 421 U.S. 684, 691 (1975) ("state courts are the ultimate expositors of state law").

[50] *See Bradshaw*, 546 U.S. at 76-78 ("Because the Sixth Circuit disregarded the Ohio Supreme Court's authoritative interpretation of Ohio law, its ruling on sufficiency of the evidence was erroneous.").

[51] *Id.* at 76.

[52] 190 P.3d 535 (Cal. 2008).

[53] 190 P.3d 573 (Cal. 2008).

20

the court's review is limited to ascertaining whether there is some evidence in the record that supports the [Board's] decision."[54]

The California Supreme Court then held:

The nature of the prisoner's offense, alone, can constitute a sufficient basis for denying parole. (Citations omitted.)  Although the parole authority is prohibited from adopting a blanket rule that automatically excludes parole for individuals who have been convicted of a particular type of offense, the authority properly may weigh heavily the degree of violence used and the amount of viciousness shown by a defendant.  [. . . .]

In some circumstances, a denial of parole based upon the nature of the offense alone might rise to the level of a due process violation—for example where no circumstances of the offense reasonably could be considered more aggravated or violent than the minimum necessary to sustain a conviction for that offense.  Denial of parole under these circumstances would be inconsistent with the statutory requirement that a parole date normally shall be set "in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public . . . ."  (Pen.Code, § 3041, subd. (a).)  "The Board's authority to make an exception [to the requirement of setting a parole date] based on the gravity of a life term inmate's current or past offenses should not operate so as to swallow the rule that parole is 'normally' to be granted. Otherwise, the Board's case-by-case rulings would destroy the proportionality contemplated by Penal Code section 3041, subdivision (a), and also by the murder statutes, which provide distinct terms of life without possibility of parole, 25 years to life, and 15 years to life for various degrees and kinds of murder. (Pen. Code, § 190 et seq.)  [¶]  Therefore, a life term offense or any other offenses underlying an indeterminate sentence must be particularly egregious to justify the denial of a parole date."  ( Citation omitted.)[55]

In *Dannenberg* the California Supreme Court explained:

[. . . .]  So long as the Board's finding of unsuitability flows from pertinent criteria, and is supported by "some evidence" in the record before the Board [citing *Rosenkrantz*], the overriding statutory concern for public safety in the individual case trumps any expectancy the indeterminate life inmate may have in a

---

[54] *Rosenkrantz*, 59 P.3d at 218.  Quoted with approval in *Shaputis*, 190 P.3d at 585.

[55] *Id.* at 222; *see Shaputis*, 190 P.3d at 584-85 ("The record supports the Governor's determination that the crime was especially aggravated *and*, importantly, that the aggravated nature of the offense indicates that the petitioner poses a current risk to public safety." (emphasis in the original)).

term of comparative equality with those served by other similar offenders. Section 3041 does not require the Board to schedule such an inmate's release when it reasonably believes the gravity of the commitment offense indicates a continuing danger to the public, simply to ensure that the length of the inmate's confinement will not exceed that of others who committed similar crimes.[56]

The California Supreme Court then held:

> Thus, there clearly was "some evidence" (citing *Rosenkrantz*) to support the Board's determination that Dannenberg's crime was "especially callous and cruel," showed "an exceptionally callous disregard for human suffering," and was disproportionate to the "trivial" provocation.  Accordingly, under *Rosenkrantz,* the Board could use the murder committed by Dannenberg as a basis to find him unsuitable, for reasons of public safety, to receive a firm parole release date.[57]

The Board must, however, "point to factors beyond the minimum elements of the crime for which the inmate was committed" that demonstrate the inmate will, at the time of the suitability hearing, present a danger to society if released.[58]  The Board "may credit evidence suggesting the inmate committed a greater degree of the offense than his or her conviction evidences."[59]  In *Lawrence*, however, the California Supreme Court rejected the argument "that the aggravated circumstances of a commitment offense inherently establish current dangerousness," holding:

> "[W]e conclude that although the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of *current* dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of

---

[56] *Dannenberg*, 104 P.3d at 795.

[57] *Id.* at 803.

[58] *Id.* at 786-87, 802-803; *see Rosenkrantz*, 59 P.3d at 222.

[59] *Dannenberg*, 104 P.3d at 803 n.16 (citing *Rosenkrantz*, 59 P.3d at 219).

the commitment offense remain probative to the statutory determination of a continuing threat to public safety."[60]

This is the clarification upon which *Hayward*, *Pearson*, and *Cooke* rely, and it was the language in *Lawrence* to which this Court alluded in its Order, which the State declined to address.

With respect to the underlying commitment offense, the applicable regulation provides:

(1) Commitment Offense.  The prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:
     (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
     (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
     (C) The victim was abused, defiled or mutilated during or after the offense.
     (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
     (E) The motive for the crime is inexplicable or very trivial in relation to the offense.[61]

The evidence clearly supports a finding that this case falls with the scope of (c)(1)(E) and possibly (c)(1)(B).  Under California law, a court neither re-weighs the evidence nor substitutes it's discretion for that of the Board.  Judicial review of a decision denying parole is "extremely deferential."[62]  Thus, under *Rosenkrantz* and *Dannenberg*, this Court could not say that the decision of either the Los Angeles Superior Court or the California Court of Appeal was contrary to, or involved an unreasonable application of California law at the time it was decided, or was based on an unreasonable determination of the facts in light of the evidence.   On the other hand, because *Hayward*, *Pearson*, and *Cooke* require that *Lawrence* and *Shaputis* be applied, the

---

[60] 190 P.3d at 554-55; *see Cooke*, 606 F.3d at 1214.

[61] Cal. Code. Regs., tit. 15, § 2402(c).

[62] *Rosenkrantz*, 59 P.3d at 210.

decisions of the Los Angeles Superior Court and the California Court of Appeal in this case were contrary to, or involved an unreasonable application of California law.

While the record in this case might support an argument that the denial of Singer's parole can be reconciled with *Pearson* and *Cooke*, the State has rejected the opportunity this Court gave to make that argument. Instead, the State decided to stand on its position that *Hayward*, *Pearson*, and *Cooke* were wrongly decided and apparently void.

The Board clearly found that Singer's crime was atypical and the motive trivial. This would be sufficient under *Rosenkrantz* and *Dannenberg*. What the Board did not do, and the State expressly declined to address, is explain how events ending in 1990 show that Singer presented a significant risk to public safety in 2006, rendering it insufficient under *Lawrence* and *Shaputis*. Thus, under *Hayward*, *Pearson*, *Cooke*, this Court is compelled to find that the Board's denial of parole violated Singer's liberty interest protected by the Due Process Clause of the Fourteenth Amendment.[63]   Singer is entitled to relief.[64]

---

[63] In reaching this conclusion, this Court is mindful of the following significant problems: (1) the applicability of *Lawrence* and *Shaputis* to cases in which the state court decision became final prior to August 21, 2008; and (2) the appropriate scope of review by federal courts in federal habeas proceedings under 28 U.S.C. § 2254(d) of the application by the California courts of the California "some evidence" rule. In other words, to what extent may subsequent California cases modify the "liberty interest" established by California law and recognized in *Hayward*, *Pearson*, and *Cooke*.

[64] It appears from the record that Singer has yet to serve his minimum term. Even assuming he was in custody from the time of the offense (July 1990) and was given credit for the time served prior to his conviction in September 1991, Singer's minimum term did not expire until July 2010. There is no authority for the proposition that a state prisoner has a constitutionally protected right, under any theory, to a parole before the end of his minimum term. The State, by failing to raise this point in its answer and refusing to comply with this Court's Order, has not raised this point, and it is therefore deemed waived.

24

## V.  ORDER

Based upon the foregoing,

**IT IS HEREBY ORDERED THAT** the Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 is **GRANTED**.

**IT IS FURTHER ORDERED THAT** the denial of parole is vacated and this matter is remanded to the California Board of Parole Hearings for further proceedings consistent with the decisions of the California Supreme Court in *In re Lawrence*, 190 P.3d 535 (Cal. 2008), and *In re Shaputis*, 190 P.3d 573 (Cal. 2008),[65] as interpreted by *Hayward v. Marshall*, 603 F.3d 546 (9th Cir. 2010) (en banc),  *Pearson v. Muntz*, 606 F.3d 606 (9th Cir. 2010) (per curiam), *Cooke v. Solis*, 606 F.3d 1206 (9th Cir. 2010), and *Pirtle v. California Board of Prison Terms*, 611 F.3d 1015 (9th Cir. 2010).

**IT IS FURTHER ORDERED THAT**, if the Board of Parole Hearings has not held a hearing within 120 days of the date of entry of this Order, the Secretary, California Department of Corrections and Rehabilitation, must release Singer to parole status.

**IT IS FURTHER PROVIDED THAT** nothing in this Order is intended to, nor may it be construed as, restricting or otherwise inhibiting, directly or indirectly, the authority of the Secretary, California Department of Corrections and Rehabilitation, to set restrictions or conditions on the grant of parole to the extent otherwise provided by the laws of the State of California.

---

[65] *See In re Prather*, 234 P.3d 541, 550-54 (Cal. 2010); *Haggard v. Curry*, --- F.3d ---, 2010 WL 4015006 (9th Cir. October 12, 2010).

The Clerk of the Court is to enter final judgment accordingly.

Dated:  December 1, 2010.

                                    /s/ James K. Singleton, Jr.
                                    JAMES K. SINGLETON, JR.
                                    United States District Judge